UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | Criminal No. 4:25-cr-399-9 |
| v. | § | |
| | § | **Filed Under Seal** |
| EMBEER GUTIERREZ TERNAWSKY | § | |

### GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO REVOKE DETENTION ORDER

The United States of America ("Government") files this response to Embeer Gutierrez Ternawky's ("Defendant") motion to revoke detention order:

## I.    DEFENDANT'S MOTION

On September 8, 2025, the Defendant filed a motion "for reconsideration of detention" and to release the Defendant on conditions of release pursuant to Title 18, United States Code, § 3142(c). (D.E. 133).

## II.    BACKGROUND

A.    The Indictment

The Defendant is a charged with participating in drug trafficking conspiracy involving the distribution of cocaine, the illegal trafficking of firearms and the illegal possession of a machine gun.

1

B.    The Magistrate Court's Release Order

On July 7, 2025, United States Magistrate Judge Peter Bray ("Judge Bray") signed an order detaining the Defendant. (D.E 45).

## II.    REBUTTABLE PRESUMPTION OF DETENTION

Under Title 18 U.S.C. § 3142(e)(3) there is a rebuttable presumption that the Defendant should be detained. Where a Defendant has been indicted and charged with an offense for which a maximum term of imprisonment of ten (10) years or more is prescribed by the Controlled Substances Act, as in Count Six in the present case, a rebuttable presumption that there is no condition or combination of conditions that will reasonably assure the appearance of the person as required and the safety of the community is triggered. Title 18 U.S.C. § 2(e)(3)(A).

The presumption shifts the burden of production to the Defendant, while the Government retains the burden of persuasion. Dangerousness, that is, danger that the Defendant might engage in criminal activity to the detriment of the community must be proved by clear and convincing evidence. 18 U.S.C. § 3142(f). When the Court considers dangerousness "[t]he concern about safety is to be given a broader construction than the mere danger of physical violence. Safety of the community 'refers to the danger that the defendant might engage in criminal activity to the detriment of the community." *United States v. Wilson,* 820 F. Supp. 1031 (5th Cir.

2

1993) *quoting United States v. Cook,* 880 F.2d 1158 (10th Cir. 1989).

The burden of proof regarding risk of flight is by a preponderance of the evidence. The mere production of evidence, however, does not completely rebut the presumption, and in making its ultimate determination the court may still consider the findings by Congress that drug offenders pose a special risk of flight and dangerousness to society. *United States v. Hare,* 873 F.2d 796 (5th Cir. 1989). Additionally, for pretrial detention to be imposed on a defendant, the lack of reasonable assurance of either the defendant's appearance or the safety of others or the community, is sufficient, both are not required. *Hare*, 873 F. 2d at 799; *Fortna*, 769 F. 2d at 249. "On the issue of appearance, 'the judicial officer must determine that it is more likely than not that no condition or combination of conditions will reasonably assure an accused's appearance.'" *Id.* (quoting *United States v. Westbrook,* 780 F.2d 1185, 1189 (5th Cir. 1986)).

## III.    THE COURT REVIEWS THE RELEASE ORDER *DE NOVO*

The district court reviews a release order *de novo*. *See, United States v. Rueben*, 974 F.2d 580, 585-86 (5th Cir. 1992) ("[T]he district court acts *de novo* and must make an independent determination of the proper pretrial detention or conditions of release."); *United States v. Delker*, 757 F.2d 1390, 1394-95 (5th Cir. 1985). The "simple preponderance standard" governs the flight risk determination,

3

that is, a detention order should issue if "the judicial officer should determine that it is more likely than not that no condition or combination of conditions will reasonably assure the accused's appearance." *United States v. Fortna*, 769 F.2d 243 (5th Cir. 1985) (distinguishing the standard governing the flight risk determination with the higher "clear and convincing" burden of proof that governs detention based on danger to the community).

## IV. THE DEFENDANT IS A FLIGHT RISK AND A DANGER TO THE COMMUNITY

The Government respectfully requests that this Court deny the Defendant's motion. Based upon the factors regarding detention set forth under Title 18 U.S.C., § 3142(g), there is no condition or combination of conditions that would eliminate his risk of flight, the danger to the community and reasonably ensure his appearance for trial.

### A.   The Defendant Realistically Faces a Lengthy Prison Sentence

The nature and circumstances of the offense is one of the factors the Court must consider in making its detention determination. *See,* Title 18 U.S.C. § 3142(g)(1).

4

The Defendant was involved in a drug trafficking conspiracy that involved the distribution of approximately 16 kilograms cocaine (D.E. 133-2, Transcript of detention hearing p.p. 11, 14, 16 ).

The Government's evidence at the detention hearing established that the Defendant was a leader/organizer of the charged drug trafficking scheme. The Defendant met with FBI CSs on multiple occasions concerning transporting large loads of cocaine to different locations. The Defendant was the "main one' communicating with the CSs about the deal. *Id.* at 92. The Defendant planned and organized the transport of the kilograms of cocaine using a crew of people to serve as drivers of vehicles that would transport the cocaine and others to serve as scouts in look out vehicles to avoid law enforcement. *Id.* at 16; 92. A total of nine people in six vehicles were ultimately used to further the conspiracy. *Id*. at 21-22.

In exchange, the Defendant was to receive $10,000 from the CS which he was to divide up amongst his crew. *Id.* The Defendant, along with co-defendant Raul Correa ("Correa), told the CS that each crew member was to receive $1,000 each but that the Defendant and Correra would receive a greater payment of $1,500 each. *Id.*

It was this Defendant who contacted the CS the day of the cocaine transport deal to set up a meet time and place. *Id.* at 17. The Defendant told the CS that he directed his crew to all their location via cell phone so that the crew would know

5

where to meet. *Id.* Several co-defendants were present for the initial meet with the CS, but it was only this Defendant who spoke with the CS before the group moved to a second location in order to do the drug deal. *Id.* at 19. The Defendant's vehicle was the first to arrive. *Id*. at 20-21.

In addition to recruiting and directing accomplices, the Defendant exercised decision making authority over drug conspiracy. He set the price for the transportation and claimed a right to a larger share of the drug proceeds. *Id.* at 16.

The Defendant faces a mandatory minimum sentence of at least ten years and up to life imprisonment with regard to Count Six. He faces up to years on ten years Count Five (illegal possession of a machinegun) and up to years five years on Count Two(dealing in firearms without a license). Sentences on the counts could be imposed consecutively.

The Defendant will not meet the criteria for "safety valve" pursuant to U.S.S.G. § 5C1.2 because he was an organizer and a leader of criminal activity that involved five or more participants. Therefore, the Court will have to impose a sentence of imprisonment of at least 10 years should the Defendant get convicted.

The Defendant is facing a maximum sentence of life imprisonment.

**B.   <u>The Weight of the Evidence Against the Defendant is Overwhelming</u>**

In addition to the severity of the charges, the Court should also consider the

strength of the evidence when assessing the Defendant's likelihood of appearing for trial. Title 18 U.S.C. § 3142(g)(2).

The Government's evidence with respect to the charged offense of distributing a controlled substance is overwhelming. The Defendant communicated with Federal Bureau of Investigation ("FBI") confidential sources ("CS") about transporting two loads of cocaine from Houston to other locations on several occasions. These communications were recorded. *Id*. at 11. The day of the actual drug deal, two CSs told the Defendant he and the Defendant's crew would be transporting two loads of cocaine concealed within suitcases. The CS told the Defendant that one suitcase contained seven kilograms of cocaine and another suitcase containing eight kilograms of cocaine. *Id.* at 27. One load was to be transported to Dallas; the other to Louisiana. *Id.* These communications were recorded.

The Defendant was recorded in video taking one of the suitcases containing what he believed was more than five kilograms of cocaine and placing it inside the vehicle he was using the night of the drug deal. *Id.* The Defendant was then recorded receiving the money which was payment for the transportation of cocaine. *Id.* A chemical placed on the money by agents later appeared on the Defendant's hands. *Id.* at 35.

7

The Government's evidence with respect to the firearms counts is equally overwhelming. The Defendant was recorded on numerous occasions offering to sell CSs firearms. *Id.*   On one occasion, the Defendant, along with Correa, told the CS he could provide him/her with a grenade, a rocket launcher and military grade weapons. *Id*. at 38.   The Defendant sent the CS pictures of the grenades. *Id*. at 92. The Defendant and Correa told the CS that they would have to kidnap people to obtain those particular weapons. *Id.*

Later, the Defendant sold the CS a machinegun conversion device. *Id*. at 45. The controlled purchase of the machine gun was recorded. *Id.* at 46.   The Defendant also sold the CS two additional firearms on other occasions; both of which were also recorded in audio and video. (*See* FBI reports of controlled purchase of firearms, attached as Government's Exhibits 1 and 2).

## **The History and Characteristics of the Defendant Favor Detention**

The Court must consider the history and characteristics of the Defendant to include physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history related to drug and alcohol abuse, criminal history and record concerning appearance at court proceedings. Title 18 U.S.C. § 3142(g)(3)(A).

Although the Defendant has no criminal history, he has substantial foreign

8

ties. He is a citizen and national of Venezuela with no legal status in the United States. Judge Bray noted that the Defendant's ties to the United States were recent having only been in the United States for two years; that he had very little assets in the United States and that his parents presently reside in Venezuela. (D.E. 133-2, Transcript of detention hearing p.119; D.E.45, order of detention, p.4 ) Judge Bray further recognized that the Defendant faces deportation should he be convicted in addition to a lengthy prison sentence and that therefore the Defendant he has little incentive to appear for court:

> None of them want to go back to Venezuela. And it's kind of counter-intuitive, but that's a problem. There's no good reason for them to show up to court and face a conviction in this case so that they can then, when that's done, be deported to Venezuela or wherever else these days. None of them have significant assets or liabilities, although most of them report some kind of employment. There's not a whole lot holding them here and there's a whole lot of reasons to not show up. This whole idea that they have status or applications, that's all in grave jeopardy at this point given this case." *Id*.

### D.   <u>Danger to the Community</u>

The Defendant's release poses a serious risk of danger to the community which favors detention under Title 18 U.S.C. § 3142(g)(4).

The Defendant is a danger to the community because he agreed to transport what he believed was 15 kilograms of cocaine for others; sold firearms and a

machine gun to a CS.

Further, the Defendant told a CS that he could provide him with grenades and a rocket launcher and that he would be willing to kidnap people in order to procure those munitions for the CS.

In a post-arrest statement, the Defendant also told agents he was a member of Anti-Tren, a violent transnational criminal gang involved in drug trafficking, firearms trafficking and kidnappings *Id*. at 62 .

## VII.  THERE ARE NO CONDITIONS THAT CAN REASONABLY ASSURE THE SAFETY OF THE COMMUNITY AND THE DEFENDANT'S APPEARANCE AT TRIAL

No conditions exist that will reasonably ensure that the Defendant will appear in Court to face trial or not present a danger to the community. A release order imposing home detention and/or GPS monitoring in addition to a bond are conditions that serve as little deterrent for a person motivated to flee.   Particularly in this case, where the Defendant has broken out of handcuffs following his arrest more than once, requiring the United States Marshals Service to put a special device on the handcuffs to prevent the Defendant from breaking out of the restraints. *Id.* at 94.

District courts are well aware of a defendant's ability to remove GPS and other forms of electronic monitoring.   *See, e.g., United States   v. Riquinha*, No. 07-2690, 328 Fed Appx. 665, 2009 WL 1153349, at *1 (1st Cir. April 30, 2009) (unpublished);

10

*United States v. Thomas*, 135 F.3d 873, 874 (2d Cir. 1998); *United States v. Martin*, No. 94-5148 1994 WL 709636, at *1 (4th Cir. Dec. 22, 1994) (unpublished); *United States v. Bailey*, No. 2:06cr35-3,  2007 WL 131046, at *1–2 (W.D.N.C. Jan. 12, 2007) (unpublished) (all referring to a defendant's removal of electronic monitoring bracelets); *United States v. Honken*, 378 F. Supp.2d 880, 909 (N.D. Iowa, 2004).

Given the Defendant's likelihood of conviction, the lengthy prison sentence he realistically faces, the likelihood of deportation, his lack of meaningful ties to the United States and his strong ties to Venezuela, there simply are no bond conditions that will reasonably assure his appearance at future proceedings. "[N]either the Bail Reform Act nor our case law requires a court to be absolutely certain that no possible non-detention option will prevent flight before determining that a defendant must remain in custody."  *United States v. Stanford*, 341 Fed. Appx. 979, 981-82 (5th Cir. 2009)(unpublished).

Similarly, the Defendant's involvement in a large cocaine transportation conspiracy, his possession and sale of firearms during the course of the charged conspiracy, his possession of a machine gun, his access to grenades, rocket launders and military grade weapons and his ties to the Antri-Tren transnational gang, make him a danger to the community that conditions of release cannot obviate. Accordingly, the Court should detain the Defendant pending trial.

11

## CONCLUSION

The Defendant is a danger to the community and a flight risk. There are no conditions that can reasonably assure his appearance at trial. For these reasons, the Government requests that the Court deny the Defendant's motion and issue an order detaining the Defendant pending trial.

Respectfully submitted,

NICHOLAS J. GANJEI
United States Attorney

BY:    */s Casey N. MacDonald*
Casey N. MacDonald
Assistant United States Attorney
New Jersey Bar No.043362000
Federal Bar No. 915752
1000 Louisiana
Suite 2300
Houston, Texas 77002
(713) 567-9000 (office)
(713 567-9798 (direct)

## CERTIFICATE OF SERVICE

On September 19, 2024, the Government filed its Response in Opposition to Defendant's Motion for Release under seal and served counsel of record via email.

*/s Casey N. MacDonald*
Casey N. MacDonald
Assistant United States Attorney

12

13